IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MISTEY RAE KOMOREK,               )
                                   )
        Plaintiff,                 )
                                   )
    vs.                            )   Civil. Action No. 20-34
                                   )
COMMISSIONER OF SOCIAL SECURITY,   )
                                   )
        Defendant.                 )

<u>ORDER</u>

AND NOW, this 30th day of March, 2021, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 12), filed in the above-captioned matter on June 17, 2020,

IT IS HEREBY ORDERED that the Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 10), filed in the above-captioned matter on May 18, 2020,

IT IS HEREBY ORDERED that the Motion is GRANTED IN PART and DENIED IN PART. Specifically, Plaintiff's Motion is granted to the extent that it seeks remand to the Commissioner of Social Security ("Commissioner"), as set forth below, and denied in all other respects. Accordingly, this matter is hereby remanded to the Commissioner for further evaluation under sentence four of 42 U.S.C. § 405(g).

**I.    Background**

Mistey Rae Komorek ("Plaintiff") protectively filed an application for disability and disability insurance benefits, pursuant to Title II of the Social Security Act, on November 20, 2015. (R. 108). She alleged disability beginning November 14, 2015 due to hydrocephalus, headaches, dizziness, depression, staples in her right ankle, a tight right heel cord, difficulty

1

walking, difficulty standing, and insomnia. (R. 234—35).[1]  After her claim was initially denied on March 1, 2016, she requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing took place on February 9, 2018. (R. 108).  The ALJ determined Plaintiff was not disabled from the alleged onset date through the date of decision, July 17, 2018. (R. 119—20). Plaintiff asked the Appeals Council to review the ALJ's decision, and the Appeals Council accepted the matter for review. (R. 5, 32).

Reviewing the ALJ's decision, the Appeals Council also considered Plaintiff's subsequent claim that she suffered a cerebellar hemorrhage on May 26, 2018. (R. 7).  The Appeals Council decided Plaintiff became disabled upon suffering the cerebellar hemorrhage but adopted the ALJ's decision in all other respects. (R. 5, 10).  Plaintiff filed a timely appeal with this Court, challenging the Appeals Council's decision to the extent it adopted the ALJ's determination of non-disability between November 14, 2015 and May 25, 2018.  The parties have filed cross-motions for summary judgment. (Doc. Nos. 10—14).

## II.     Standard of Review

District courts are authorized to affirm, modify, or reverse the Commissioner's final decisions, pursuant to 42 U.S.C. § 405(g).  That authority is limited, in that district courts must review the record as it existed before the Commissioner.  *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001).  Courts review the Commissioner's final decision to ensure all findings of fact are supported by substantial evidence and there are no errors of law.  *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).  Substantial evidence is merely "such relevant

---

[1] Hereinafter, when referring to the staples in Plaintiff's right ankle, the Court will refer to her "right ankle fusion."  The write up of the X-Ray of Plaintiff's right ankle condition describes her right ankle as follows: "There are staples in place fusing the talonavicular and calcaneocuboid joints," and "[i]mpression: Status post surgery with fusion in the foot." (R. 443).

evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Thus, the standard of review is quite deferential. *Schaudeck*, 181 F.3d at 431 ("Overall, the substantial evidence standard is deferential and includes deference to inferences drawn from the facts if they, in turn, are supported by substantial evidence."). However, while the standard is undoubtedly generous, "[a] single piece of evidence will not satisfy" where the Commissioner "ignores, or fails to resolve, a conflict created by [countervailing] evidence." *Morales v. Apfel*, 225 F.3d 310, 316—17 (3d Cir. 2000). This is because "meaningful judicial review" is only possible where it is apparent that all evidence has been appropriately considered, and conflicts within and among evidence have been resolved. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000). The final decision must also demonstrate the ALJ's reasoning. *Gamret v. Colvin*, 994 F. Supp. 2d 695, 698 (W.D. Pa. 2014) (citing *Hodes v. Apfel*, 61 F. Supp. 2d 798, 806 (N.D. Ill. 1999) ("Even if enough evidence exists in the record to support the decision, [the court] cannot uphold it if 'the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.'")). Even where a record is replete with evidence that *might have* supported the Commissioner's decision, a reviewing court may not correct an ALJ's "failure to consider all of the relevant and probative evidence . . . by relying on medical records found in its own independent analysis." *Fargnoli v. Massanari*, 247 F.3d 34, 44 n.7 (3d Cir. 2001) (citing *SEC v. Chenery Corporation*, 318 U.S. 80, 63 (1943)).

Persons claiming disability must demonstrate a "medically determinable basis for an impairment that prevents [them] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Id.* at 38–39. Disability determinations are subject to "a five-

3

step sequential evaluation process promulgated by the Social Security Administration." *Id.* at 39.

In *Plummer v. Apfel*, the Third Circuit "set out the relevant steps" as follows:

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § [404.] 1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. *Bowen v. Yuckert,* 482 U.S. 137, 140, 107 S.Ct. 2287, 2290–91, 96 L.Ed.2d 119 (1987). In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe," she is ineligible for disability benefits.
>
> In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work. *Adorno v. Shalala,* 40 F.3d 43, 46 (3d Cir.1994).
>
> If the claimant is unable to resume her former occupation, the evaluation moves to the final step. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled. *See* 20 C.F.R. § 404.1523. The ALJ will often seek the assistance of a vocational expert at this fifth step. *See,* [sic] *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir.1984).

*Fargnoli*, 247 F.3d at 39 (citing *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999)); 20 C.F.R. § 404.1520(a)(4)(i)—(v).  Using this five-step process the ALJ—as opposed to "treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011)

### III. The ALJ's Decision[2]

---

[2] The Court focuses on the ALJ's decision because the Plaintiff has appealed the Commissioner's final decision to the extent the Appeals Council adopted the ALJ's determination of non-disability

In this case, the ALJ went through the five-step evaluation and determined: (1) Plaintiff had not engaged in substantial gainful activity since the alleged onset date (R. 110); (2) Plaintiff suffered from six severe impairments (obesity, hydrocephalus, intracranial hypertension, diabetes, depressive disorder (recurrent), and borderline personality disorder) (R. 111); and (3) neither Plaintiff's impairments nor a combination thereof met or medically equaled a listed impairment. (R. 111—12). Having found Plaintiff did not suffer from a listed impairment, the ALJ assessed Plaintiff's residual functioning capacity ("RFC").

To determine Plaintiff's RFC, the ALJ considered Plaintiff's representations that her condition adversely affected concentration and memory, and made "lifting, squatting, bending, standing, walking, sitting, kneeling, stair climbing, [and] seeing" difficult. (R. 114). The ALJ also considered Plaintiff's daily activities and medical history, including the opinions of Dr. Zimba, Dr. Gomez, Dr. Saba, and Dr. Mancini. (R. 116—17).[3] From the evidence, the ALJ determined Plaintiff's symptoms were not as limiting as Plaintiff believed and formulated Plaintiff's RFC to include some light work. (R. 6, 113, 119).[4] Using that RFC, the ALJ

---

between November 14, 2015 and May 25, 2018. (Doc. No. 10, pg. 2). The Appeals Council explicitly adopted the ALJ's findings and conclusions for that period of time. (R. 5) ("The Appeals Council adopts the Administrative Law Judge's findings or conclusions regarding whether the claimant is disabled for the period from the claimant's alleged onset date of November 14, 2015 through May 25, 2018.").

[3] The ALJ did not have the opportunity to consider the opinion of Dr. Polin (R. 1790—92) because that opinion was specifically provided to the Appeals Council. Because the Court focuses on the ALJ's decision as adopted by the Appeals Council, the Court will not address Dr. Polin's findings.

[4] The ALJ's RFC determination, with limitations, included the following: "claimant has the residual functional capacity to perform light work . . . [s]he is able to frequently climb ramps and stairs, but never climb ladders, ropes, or scaffolds. She is able to occasionally balance, stoop, kneel, crouch, and crawl. She can frequently handle and finger objects." (R. 113). The ALJ further found, "[t]he claimant should avoid exposure to extreme cold and head, unprotected heights, and moving mechanical parts. She is able to perform work that is simple and routine in a work environment free of fast paced production requirements." (R. 113). And, "[s]he is limited to occasional interaction with the general public." (R. 113).

determined Plaintiff could hold three jobs in the national economy. (R. 119) (cleaner, housekeeping; merchandise clerk; routing clerk). Thus, the ALJ concluded Plaintiff was not totally disabled under the Social Security Act. (R. 118—19).

### IV.  Legal Analysis

Plaintiff challenges the ALJ's determination that she was not disabled because she was capable of light work. Among other things, "light work" requires "a good deal of walking or standing." 20 C.F.R. § 404.1567(b). The Social Security Administration has further explained that "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." Soc. Sec. Ruling 83-10; *Fargnoli*, 247 F.3d at 40 (citing *Jesurum v. Sec. of Health & Human Servs.*, 48 F.3d 114, 119 (3d Cir.1995)); *Koelliker v. Comm'r of Soc. Sec.*, No. CV 18-105, 2019 WL 1427083, at *1 n.1 (W.D. Pa. Mar. 29, 2019). Plaintiff contends the ALJ should have found her to be capable of sedentary work which requires only two stand-and-walk hours in an eight-workday.[5] Plaintiff argues that the ALJ erred at two points in her analysis, which led to an incorrect determination of Plaintiff's capacity for work. First, Plaintiff argues the ALJ failed to consider whether her right ankle fusion constituted a severe impairment at step two of the five-step sequential evaluation process. (Doc. No. 11, pgs. 5, 7—10). Second, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to account for standing and walking limitations associated with her right ankle fusion, as well as standing and walking limitations associated with her hydrocephalus. (Doc. No. 11, pgs. 5, 10—14). The Court agrees with Plaintiff's second argument, that the ALJ's RFC determination is not supported by substantial evidence.

---

[5] "[A]t the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday." Soc. Sec. Ruling 83-10.

Because remand is necessary, the Court need not address Plaintiff's first alleged error concerning the ALJ's step-two analysis.[6]

The RFC is "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Fargnoli*, 247 F.3d at 40. When an ALJ fixes a claimant's RFC, the ALJ "must consider all relevant evidence" and provide "a clear and satisfactory explication of the basis on which" her determination "rests." *Proper v. Apfel*, 140 F. Supp. 2d 478, 483 (W.D. Pa. 2001). Reviewing courts require a clear and thorough decision because, without one, a finding that the ALJ's decision is supported by substantial evidence would "approach[] an abdication" of duty. *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981) (citing *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979)). Within the ALJ's explanation of her decision, she must address both the evidence that supports the RFC determination, and any evidence that she necessarily rejected in arriving at the final RFC determination. *Cotter*, 642 F.3d at 705. Otherwise, reviewing courts "cannot tell if significant probative evidence was not credited or simply ignored." *Id.*

In this matter, as the ALJ explained the RFC determination, she noted Plaintiff's testimony regarding her right ankle fusion. (R. 114) ("The claimant alleged that she is unable to

---

[6] Plaintiff acknowledges that, because the ALJ ultimately decided step two in her favor, any failure to include additional severe impairments would likely be harmless. (Doc. No. 11, pg. 9). When an ALJ errs at step two, but ultimately decides step two in the claimant's favor, such error is not reversible. *Gerald v. Berryhill*, No. 3:17-CV-00575, 2018 WL 7364649, at *5 (M.D. Pa. Oct. 12, 2018), *report and recommendation adopted*, No. CV 3:17-575, 2019 WL 719829 (M.D. Pa. Feb. 19, 2019) ("Because the outcome of a case depends on the demonstration of functional limitations, when an ALJ identifies at least one severe impairment and ultimately properly characterizes a claimant's symptoms and functional limitations, the failure to identify a condition as severe is deemed harmless error."); *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 (3d Cir. 2007). Therefore, while the ALJ omitted Plaintiff's right ankle fusion from her discussion of Plaintiff's severe impairments, non-severe impairments, and not-medically determinable impairments at step two (R. 111), such an error could have been rectified by adequate consideration of the functional limitations caused by the right ankle fusion later in the decision.

work due to . . . staples in right ankle, tight heel cord on the right, difficulty walking and standing . . . (Ex. 1E)," and "[t]he claimant also reported not having full mobility of her right ankle, as well as pain. She estimated that she is able to walk up to 10 yards before needing to stop, sit up to one hour, and stand up to 5 minutes."). In the same paragraph, the ALJ summarized the rest of Plaintiff's testimony about, *inter alia*, her residence at a women's shelter, lumbar punctures, use of a walker for balance, swelling of the hands, ongoing mental health treatment, and headaches. (R. 114). The ALJ also outlined Plaintiff's daily activities, including caring for a pet, performing personal care, preparing meals, etc., before turning to the objective medical evidence. (R. 114—15).

Reviewing the medical reports and opinions in the record, the ALJ summarized significant medical findings, including Plaintiff's history of hydrocephalus, obesity, occasional use of a cane, instances of gait abnormality, her ability to walk on heels and toes and squat, her ability to ascend and descend an exam table, her strength, and her dexterity. (R. 115). The ALJ also discussed Dr. Zimba's determination that Plaintiff could carry up to twenty pounds frequently, fifty pounds occasionally, walk up to two hours in an eight-hour workday, and sit up to four. (R. 115). She afforded his opinion "some weight." (R. 116). The ALJ further looked at multiple evaluations from 2017 that indicated fluctuating gait normality and headaches associated with suspected intracranial pressure. (R. 115). The ALJ noted CT scans and MRIs that confirmed Plaintiff's hydrocephalus diagnosis, and she acknowledged Plaintiff's 2017 diabetes diagnosis. (R. 116). The ALJ also thoroughly reviewed Plaintiff's mental health history and treatment. (R. 116—17). The ALJ indicated she considered a medical source statement from Dr. Gomez who, though not closely familiar with the Plaintiff, had found significant lift and carry restrictions (less than ten pounds), and recommended two stand-and-

walk hours in an eight-hour workday. (R. 116—17). She afforded Dr. Gomez's opinion "little weight." (R. 117). The ALJ finally considered medical opinions from State agency consultants, including one that indicated Plaintiff could perform light work with some postural and environmental limitations. (R. 117). The ALJ afforded the State agency consultants' assessments "great weight." (R. 117). Concluding her review of the evidence, the ALJ determined Plaintiff would likely not suffer from headaches or gait disturbance for more than twelve months, and that she had previously recovered from episodes of headaches and gait abnormality. (R. 117). From those findings, the ALJ determined Plaintiff was not as limited as she might believe, so some work was appropriate. (R. 118).

Though the ALJ's explanation of her decision is, in some respects, quite thorough, a discussion of the medical evidence related to Plaintiff's right ankle fusion and pain and/or mobility limitations associated therewith is noticeably absent. Regardless of whether Plaintiff's ankle constituted a severe medical impairment, it was necessary for the ALJ to consider it in determining Plaintiff's RFC. *Hrnjic v. Berryhill*, No. CV 1:16-302, 2018 WL 529825, at *4 (W.D. Pa. Jan. 24, 2018) (finding failure to consider non-severe mental impairments required remand). Evidence in the record suggests Plaintiff may have been functionally limited by her right ankle fusion. Though Plaintiff testified that walking was one of her main methods of transportation (R. 63—64), she also indicated she needed to stop and rest frequently. Plaintiff testified that the right ankle caused pain and limping (R. 59), and indicated that her speed of movement had slowed down. (R. 63).

Dr. Zimba, whose opinion the ALJ afforded "some weight" noted Plaintiff's "history of a right heel cord lengthening in the 1980s," her complaint that "[s]he still has discomfort in the right ankle," and a confirmation of right ankle fusion by X-Ray. (R. 429, 432, 443). Dr. Zimba

9

also noted Plaintiff's "wide-based" gait, though he indicated she was not using an assistive device. (R. 431). Dr. Zimba further evaluated Plaintiff's range of motion in her ankles and found that while her left ankle's range of motion was normal, she could neither extend nor flex the right ankle. (R. 442) (finding zero degrees dorsi-flexion and zero degrees plantar-flexion in Plaintiff's right ankle, compared to twenty degrees and forty degrees, respectively, in the left). Commenting on Plaintiff's work ability, Dr. Zimba indicated that while Plaintiff was quite capable in some respects—could lift and carry ten pounds continuously; handle, finger, feel, push and pull continuously; climb stairs, ramps, ladders, and scaffolds occasionally, etc.—she would only be able to stand or walk for fifteen minutes at a time, or a total of two hours in an eight-hour workday. (R. 434—37). Dr. Zimba's recommendations regarding Plaintiff's ability to stand and walk were consistent with Dr. Gomez's stand-and-walk opinion. (R. 426) (recommending two hours of standing and walking in an eight-hour workday). This evidence, indicating a possible functional limitation of Plaintiff's ability to stand and walk for more than a few hours of the day, conflicted with Dr. Saba's determination in May 2016 that Plaintiff would be capable of walking six hours of an eight-hour workday. (R. 90). The ALJ afforded great weight to Dr. Saba's review because it was "supported by the record as a whole," and because Dr. Saba, a state agency consultant, was "highly qualified" for disability evaluations. (R. 117).

      While the ALJ considered these medical opinions and indicated the weight she afforded them, she never specifically discussed the differences of opinion regarding Plaintiff's standing and walking ability in the context of Plaintiff's right ankle fusion. Thus, comparing the evidence in the record to the ALJ's discussion of the evidence, the Court cannot discern: (1) the basis of the ALJ's rejection of Dr. Zimba's determination, consistent with that of Dr. Gomez, that Plaintiff could only walk two hours of an eight-hour workday; and (2) what, if any, objective

medical evidence the ALJ considered regarding Plaintiff's complaint of a functional limitation due to pain in her right ankle. The ALJ's failure to adequately discuss Plaintiff's right ankle fusion stands in contrast to other instances where the bases of the ALJ's decision are clear. For instance, Plaintiff has argued that the ALJ "ignore[d] Ms. Komorek's significant hydrocephalus and the limitations imposed thereby." (Doc. No. 11, pg. 12). On the contrary, it is clear to the Court that, while the ALJ considered the subjective and objective evidence of Plaintiff's hydrocephaly symptoms, the ALJ ultimately concluded that symptoms associated with that condition came and went. (R. 117) (discussing whether Plaintiff explored neurosurgical solutions, the ALJ found that "given her past history and lack of evidence, the record suggests that her current headaches and gait disturbance will not last 12 months."). That conclusion is a reasonable in light of the ALJ's explicit consideration of evidence that would indicate the headaches, dizziness, and gait disturbances caused by hydrocephaly fluctuated. (R. 115).[7]

      Unlike the ALJ's consideration of Plaintiff's hydrocephalus, the ALJ's decision does not adequately explain how she considered the Plaintiff's right ankle fusion and any functional limitations that it might have caused independently, or in combination with Plaintiff's other impairments. The only explanation provided is that Plaintiff's complaints of pain were undermined by her daily activities. (R. 114). Beyond that, the ALJ did not explain whether and how she considered Plaintiff's objective evidence of the right ankle fusion and how that might

---

[7] Contrary to Plaintiff's assertion, the Court does not find the ALJ's finding that Plaintiff had experienced periods of recovery to be an instance where the ALJ substituted her lay opinion for medical professionals' opinions. (Doc. No. 13). That was a reasonable inference from the ALJ's determination that, at times, Plaintiff's hydrocephalus symptoms were limiting (R. 115 (citing Ex. 2F, R. 315—38)), and at other times they were not (R. 115 (citing Ex. 6F, R. 429)). It is also reasonable for the ALJ to conclude Plaintiff's hydrocephalus was not always disabling when the ALJ considered medical imaging that showed Plaintiff's hydrocephalus had not changed since 2008. (R. 115 (citing Ex. 16F, R. 782)).

have affected Plaintiff's ability to stand and walk for more than a short period of time. There is no explanation for why the ALJ evidently rejected Dr. Zimba's determination that Plaintiff was limited to two stand-and walk hours in an eight-hour day. That the ALJ assigned Dr. Zimba's opinion "some weight" because he examined her once and it appeared "he may have overestimated the claimant's functional capabilities" (R. 116) fails to fil that gap. Without more, the Court cannot discern whether the ALJ rejected this evidence or ignored it, therefore the Court cannot determine whether the ALJ's decision is supported by substantial evidence.

Arguing for affirmance of the Commissioner's final decision, Defendant marshals the evidence in the record that the ALJ *might have* relied on to reject Plaintiff's right ankle fusion as the source of any functional limitation. However, it is not a lack of evidence in the record, but rather, the lack of indicia in the ALJ's decision that she considered all of the evidence that requires remand. The ALJ's explanation of her reasoning is not sufficiently clear for the Court to understand how the ALJ resolved conflicts among evidence concerning the extent of any limitation on Plaintiff's mobility caused by her right ankle fusion. Defendant points out that the ALJ did explicitly consider Dr. Zimba's findings, (Doc. No. 13, pg. 11), however, the ALJ did not discuss Dr. Zimba's notes concerning Plaintiff's right ankle fusion, discomfort, and limited range of motion. (R. 115). Defendant further points to evidence in the record indicating that there were no complications from Plaintiff's right ankle fusion. (Doc. No. 11, pg. 12 (citing R. 443)). However, this Court may not independently review that evidence to determine whether the record supports a finding of non-disability, rather it must be apparent that the ALJ relied on that evidence to resolve conflicting evidence in the record. *Fargnoli*, 247 F.3d at 44 n.7; *Machen v. Colvin*, No. 2:12-CV-01724-TFM, 2013 WL 3168658, at *9 (W.D. Pa. June 20, 2013) (citing *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996)) ("It is not enough that the record contain

sufficient evidence to support the ALJ's conclusion under some hypothetical rationale; rather, the ALJ must 'build an accurate and logical bridge between the evidence and the result.'")). Without a more thorough discussion of the evidence concerning Plaintiff's right ankle fusion and how, either independently or in combination with the Plaintiff's other impairments, it may have affected the Plaintiff's RFC, the Court is unable to meaningfully review the ALJ's determination of non-disability.

V.     **Conclusion**

Because the record does not permit the Court to determine whether the ALJ's RFC determination is supported by substantial evidence, the Court finds the ALJ's decision is unsupported by substantial evidence. Accordingly, the Court hereby remands this matter for further consideration consistent with this Order.

s/ Alan N. Bloch  
United States District Judge

ecf:     Counsel of record